I'll call the matter of Kim McMullen v. Franklin Tennis and Robert B. Stewart. But before I hear argument, let me note two matters. First, our colleague, Judge Cowan, is indeed present, though not physically on the bench. Judge Cowan, I think I can hear you from a distance. I'm in attendance, yes, sir. Very well. And I also want to take this moment to not only recognize on the bench the participation in this panel of our distinguished colleague and dear friend, Judge Ann Thompson from the District of New Jersey, but also to thank her for her assistance to this court. Our workload is such, and the reality of persistent vacancies also such, that we very badly need the assistance of visiting judges. And we're always delighted when the district judges from the Third Circuit, from within the Third Circuit, are ready and willing to help us out. And Judge Thompson has done just that on many occasions. And beyond all that, she is just a very distinguished colleague, a delightful person, and a wonderful friend. And we're happy to have her join us on this panel. Thank you very much. So with that, counsel, could we proceed in argument? It's Mr. Ziegler. Yes, Your Honor. And thank you, Your Honor, and thank you, Judge Thompson, for being here. And thank you for hearing argument on this. As you mentioned, my name is Matthew Ziegler. I represent Kim McMullen in this matter. And I'd like to begin by asking for two minutes of rebuttal time. Granted. Thank you. And then I'm sure that I know that Your Honors have all reviewed the entire record of this matter in the briefs, and so I'm going to skip right to the heart of the matter. And the heart of the matter really is the opinion issued in what I suppose we can refer to as McMullen 1 in the Supreme Court when they vacated the conviction for second-degree murder and they affirmed the conviction for burglary. The proposition is that they then remanded the case for a new trial, which didn't happen for five years, but the proposition's untrue. If you look at the case, they did not remand at all. You're talking about the Supreme Court? Yes. And I think it's significant that they did not remand because the Superior Court had stated in their opinion that they were remanding for a new trial. The Supreme Court knew, A, that they had just affirmed the burglary conviction, which my client had already been sentenced on, and they knew, B, that they had just set aside the second-degree murder conviction for what was ultimately an insufficiency of the evidence. Well, what happens when an appellate court vacates? It's as if there's no conviction at all. That's the end of the matter. It's as if there were no trial at all. No, they're not vacating the trial. They're vacating the conviction itself. The fact that there's a trial has to be something that was not vacated because if we vacated the proposition that there was a trial, then there would be no such thing as double jeopardy. But when they vacate, don't they say that we're going back to square one as if there was no trial? They didn't say we vacate and direct the trial court to enter a judgment of whatever this or that. That's correct. But if they had said that we vacate and direct an entry of this judgment, then they still would have vacated, which demonstrates the proposition that... But, counsel, what did the Superior Court do? The Superior Court vacated the conviction for burglary, vacated the conviction for second-degree murder, and remanded for a new trial. Exactly. And what did the Supreme Court do with respect to that Superior Court decision? It affirmed the decision vacating the second-degree murder. It vacated the decision vacating the burglary charge and did not remand. It affirmed that portion of the Superior Court's order vacating Apolli's conviction for second-degree murder. Didn't that Superior Court order, in addition to vacater, remand? No, because it only vacated the action that they took. It did not say anything in relation to remanding. In fact, if you were to look... The Superior Court vacated the convictions and the judgment of sentence and remanded for a new trial in accordance with the opinion. Yes, those two separate actions. The Supreme Court affirmed that. No, they simply affirmed the vacating of the conviction. You think that the Supreme Court of Pennsylvania would have, in its opinion, remained absolutely silent on a difference so considerable as the difference between remanding for a retrial and what would be an outright dismissal? Yes, I do. I think, A, it happens all the time. I think, B, if you were to look at it from the other side of the fence, and if the opposite thing had happened and if that were appealable, you would be saying the same thing to the prosecutor. Is this a position that you advanced at any point in your brief? The concept... This is simply to demonstrate what they did, Your Honor. The answer to the question, yes or no. I'm not advancing the concept of res judicata, Your Honor. Well, it was before the Supreme Court on the second time before you filed a petition for habeas. The Supreme Court didn't say, gee, this shouldn't be here, because we disposed of the entire case the first time it was before us. That's true, but it was a different panel. Yes, but the panel of the... They don't just make it up as they go along. They are bound by the previous decisions of the Supreme Court. I agree, but what I'm saying is that we don't know just by the fact that the Supreme Court didn't say, wait a minute, that that was not the intention of the panel that heard it. As a matter of fact, they said that we were going to affirm the conviction on the second trial. So how does that leave anything left of your argument that there should have been no retrial when they themselves affirmed the second trial?  Well, they affirmed a conviction, and they vacated a conviction, and they didn't do anything as related to the trial. I would just ask permission to move on, Your Honor. I'm halfway through my time, and I don't want to get bogged down in this. I wish you'd use your time and go right to Lockhart. I'm having trouble with Lockhart. Okay. Well, Lockhart stands for the proposition that the court should consider both the admissible and the inadmissible evidence in determining whether the prosecution presented sufficient evidence to sustain the guilty verdict. We have a massive difference here, in my opinion. One of the main differences is that the prosecution, when it went back and retried this, didn't substitute what had been evidence that was available for evidence that was no longer available. Rather, what they did is they went back and they made what was inadmissible admissible. The court had ruled, this is inadmissible, you can't use it. So they went back and they looked for more evidence. They dug up more evidence that then made the statement admissible. And that's very problematic when you consider Tibbs, and the heart of Tibbs said that what we're really looking at here with double jeopardy is, what abuses are we trying to prevent? We're trying to prevent the abuse that where you fail to present evidence to begin with, that you get a second bite at the apple. And that's what they were given, is a second bite at the apple, developing evidence that would have been available if they had gone and gotten it, but they didn't go and get it. It was there. The body was buried. They could have dug up the body and gotten that evidence, but they didn't do it. And they had that opportunity. The same thing in Lockhart. There was evidence available, but they just didn't use it. Yes, but this evidence wasn't available because it wasn't in their file. In Lockhart, the evidence was in their file. They chose not to use it because they said, well, we think we have enough. In this case, it wasn't a choice one way or another because they hadn't bothered to pursue it. Even though they knew where they could go get it, they never bothered to pursue it, and nobody knew what the evidence would say, except that the coroner said, in the first instance in this case, that this is not a homicide. This is an accident. So it's a different type of evidence. One is, it was available in our file, but we choose not to use it. This evidence is, it was not available in our file because we didn't even bother to go get it. And that's what the Double Jeopardy clause is there for, to require them to get the evidence that's available to them, to present it to the defense as evidence that they may use either in an inculpatory or an exculpatory way, and they didn't do that. What happened is they got a ruling kicking out a piece of evidence, and this is the real absurdity here, is that they got a ruling from the Supreme Court kicking out a piece of evidence because the evidence was not sufficient to admit it. And because that evidence was not sufficient, they said, you can't use this letter. But even though the evidence is insufficient, they say now we can go back and retry him and get that evidence that wasn't permitted back in. That creates an absurdity in the law, and absurdities in the law are to be avoided, as many cases say. The point is that the evidence was kicked out because there was insufficient evidence to convict him the first time, and they shouldn't be allowed to come back and use essentially the same evidence, just some more that they dug up to convict him. Well, there wasn't insufficient evidence to convict him. There was sufficient evidence to convict him. It's just that some of the evidence never should have been admitted. I mean, there was enough in the original trial to convict him. It's just that, is that so? Only if you consider the letter. But the fact is that the Supreme Court said that that letter is no evidence at all because it's not permitted. And had they gone back and represented this case without that letter, just represented what they had presented at the first trial, it never would have gone to the jury. And that was the observation that the dissent made in Tibbs, is that if it wouldn't have gone to the jury, it shouldn't be allowed to be retried. I note that I'm at three minutes now, so thank you. You have nothing further? Well, I hope to just hear him argue this functional equivalency point. In effect, how can we argue that there is in effect a finding that there is insufficient evidence? Because the heart and soul of the corpus delecti rule is that you have to present sufficient evidence to demonstrate that a crime took place before the letter can even come in. And that's what the Supreme Court said, is that all there are are some bruises and scratches, and that's not evidence at all. So there was no evidence that there was ever a crime committed except for this letter, and therefore it was an insufficiency ruling. Bob, do you have anything further? Well, do you have any Supreme Court opinions that show that the disposition here is contrary to the holdings of those cases, or those cases as they fairly be analogized to this matter? Well, I think that as I read Tibbs, I would say yes, Tibbs. But beyond that, no. All right. Thank you. Thank you very much. Mr. Ziegler, we'll have you back on rebuttal. Thank you. Mr. Jackson. Good afternoon, Your Honor. It's Greg Jackson for the appellees. I would like to raise two points, Your Honor, if I might. The first being that the Pennsylvania Superior Court has twice determined that Mr. McMullin's initial conviction was supported by sufficient evidence. Once in what we would refer to as McMullin 2, which is the decision coming after the pretrial motion, and then again in McMullin 3, which was the appeal after Mr. McMullin's subsequent conviction. Those two decisions foreclose any relief for Mr. McMullin, because in the first case, he chose not to appeal the decision that there was legally sufficient evidence in his first conviction. And in the second case, the appeal was denied by the Supreme Court. Those two points foreclose any relief for Mr. McMullin, and I have nothing further that I can offer other than to answer questions of the panel. Mr. Jackson, you are not on the brief, I believe. I am not, Your Honor. Are you from the Huntington County District Attorney's Office? I'm specially appointed, Your Honor. Are you from the Attorney General's Office? No, Your Honor. I'm actually one of the defense bar of Huntington County, but I was asked to argue this case by the district attorney. Good enough. Well, I have a question. Why should we even consider Lockhart in this matter, since the state court itself said that they were conversing for insufficient evidence, and Lockhart had nothing to do with the trial, only with the sentencing question, had nothing to do with double jeopardy as such. Your Honor, I would disagree that the Supreme Court overturned the conviction based on legal insufficiency of evidence. Rather, it was simply the evidentiary ruling that the inculpatory statement was admitted in violation of the corpus electi rule. That's what the opinion said, though. I'm sorry, Your Honor? That's what the opinion said. My reading of the Supreme Court's opinion was that there was insufficient evidence to establish the corpus electi, not to support the conviction, and that is an important distinction, Your Honor. The establishment of the corpus electi is a condition precedent for the admission of an inculpatory statement. That in no way reflects upon the sufficiency of the evidence to support the conviction, and that's the point that has twice been upheld by the Pennsylvania Superior Court, that Mr. McMullin's initial conviction, albeit supported by the inappropriate inclusion of the inculpatory statement, was legally sufficient. Why do you think, why would there be such a rule? What harm is sought to be avoided by having a rule that requires independent evidence? Well, the purpose of the corpus electi rule, Your Honor, is set forth repeatedly any time the rule is raised, and that is so that the only evidence available to the Commonwealth in this case to convict an individual is their own statement. What the corpus electi rule seeks to protect is that a person will convict themselves essentially from their own statement. And to first establish that a crime in fact occurred before there is any statement admitted and with all the danger attendant to admitting a statement however obtained. That's correct. I would agree, Your Honor. The point regarding the corpus electi rule and its correlation with the legal insufficiency argument, in my opinion, is that this issue, this is an issue that should have been raised. The legal insufficiency issue should have been raised in the first opportunity that Mr. McMullin had, which was on his denial by the Superior Court in McMullin II. If he wished to challenge the legal sufficiency of his conviction, he should have raised the appeal at that point in time, and he didn't do it. For that reason, the issue was waived, in my opinion. Well, double jeopardy is not something that's waivable, I don't think. Your Honor, it's not a matter of the double jeopardy issue. It was Mr. McMullin had the opportunity in his appeal of the pretrial motion. He asserted a pretrial motion citing the double jeopardy provisions. That motion was denied, and the Superior Court specifically referenced that Mr. McMullin's first conviction was supported by legally sufficient evidence. If Mr. McMullin disagreed with that contention, that his conviction was supported by legally sufficient evidence, he should have appealed that decision. He did not do that. Instead, the case went to trial, and he was convicted again. All of this state procedure, of course, is relevant, some of it even highly relevant. But in the end, our focus as a federal court is a pretty narrow one under the habeas statute. Certainly, that is, it's simply for us to determine whether what resulted here was a decision contrary to or involved in unreasonable application of established federal law as determined by the Supreme Court. Correct, Your Honor. And to my knowledge, in my reading of the brief, I don't see that Appellant has cited any case to support that contention. Mr. Jackson, this is not a very elegant legal inquiry on my part. I will concede at the outset. And I ask you to give away nothing in your case here. Even though you noted that you're a defense lawyer ordinarily in your area, I cannot help but observe that in one of my prior lives, I was a state court DA, in fact, coincidentally, in the county exactly contiguous. I remember, Your Honor, serving in that position. You must have been about two at the time. But isn't there something about this case that really bothers you? Your Honor, I have never in my life seen a situation like this in all the years that I practiced, and all the years that I prosecuted, and all the years that I've been on the bench, where the concatenation of events here through two trials, a, quote, successful result in the first instance, in what was about the thinnest of evidence I would think a prosecutor would offer. And then after the fact, going out and exhuming a body to bolster the case that you should have made the first time around. I know very well what our focus here is and must be as an Article III court, but I cannot let this pass without observing, as an old Pennsylvania prosecutor who knows these cases, that it is putting it mildly to refer to this as bizarre. I have no disagreement with the court's observation on this subject. But the point is, Your Honor, and as much as we may disagree with the manner in which this court's hands are tied, the court's hands are nonetheless tied. And it is not for us to question that authority. I may personally agree with Your Honor's observations, but I'm nonetheless duty-bound to argue the point that I have been sent here to argue, and I believe this court is nonetheless duty-bound to enter the decisions in according with the precedent of the United States Supreme Court. Well, we still have the question of what is a reasonable application. That's a somewhat fluid concept, is it not? It is, Your Honor, except in this case you have had, and I keep returning to this one point, is that you have a state appellate court that has twice reached a decision regarding the legal sufficiency. And what this court would then need to do is overturn that conclusion of the Superior Court without the benefit of the record that was available to the Superior Court at that point in time. The Pennsylvania Superior Court has twice determined that Mr. McMullen's initial conviction was supported by legally sufficient evidence. For this court to decide that Mr. McMullen's double jeopardy rights have been violated, it would have to overrule that decision that the Pennsylvania Superior Court has made. And as the court is well aware, state appellate court decisions are entitled to deference, especially in a situation like this. With an eloquent dissent by Judge, was it Tamela?  Which I again point to the fact that no appeal was taken from that dissent, or from that decision. That dissent appears in the decision which we have collectively referred to as McMullen 2, and no appeal was taken from that decision. And 2 beats 1. I'm sorry? And 2 beats 1. Judge Cowen, do you have anything further? I'm satisfied. Judge Thompson, do you have anything? You've got plenty of time left. I find it very interesting, and I'd like to hear more. I just am not sure I can frame the right question. My only observation would be that I just got done rereading the common law, Holmes. And if it's bizarre, it can't be the law. This is classical. You can't believe someone loses a case as a prosecutor and then retries, digs up the body and then retries it and wins it the second time. The bizarreness of it calls out for some sort of conclusion not to make it such a bizarre case. Well, Your Honor, there were a lot of things bizarre about this case, including the President Judge of Huntington County who was trying the case, demonstrating for the jury the peculiar walk that Mr. Barcelona had. That was an incident that will go down in Delaware County history. Delaware County history? Yes, the first jury was picked in Delaware County, Your Honor. Was this Judge Taylor who tried the first time, Judge Quigley tried the second time? That's correct, Your Honor. I knew both judges very well when I was a common police court judge. I was unaware of that, but gosh, I'd like to read more. What was that demonstration for, counsel? No one is exactly sure, Your Honor. We won't note on the record your attempt to stifle the laugh, but as I'm attempting to stifle it as well. It's a troubling, bizarre, if that is a fair characterization, whatever, it is a very troubling case, very troubling. Judge Thompson? I can't think of another question. Thank you very much, Mr. Jackson. Rebuttal, Mr. Ziegler? Thank you, Your Honor. I would start by mentioning that this argument about relief being foreclosed, this is the first time I've heard it in the record. It certainly doesn't appear in any of the opinions or briefs that I've read, and therefore I think that they are foreclosed from raising. What argument are you saying? His argument that because my client did not appeal from McMullen II, he's foreclosed from this matter. It hasn't been raised before. But even if it had been raised before, it's interesting that had my client appealed this far in McMullen II, the court probably would have said that he hadn't exhausted his administrative remedies. And labor and exhaustion are not issues that have been presented. As to the issue of clearly established federal law, I think that we can only say that there's no clearly established federal law if we define the law narrowly. If we say the question is whether or not there are any cases on corpus delecti, sufficiency of the evidence, and double jeopardy, then we can say, okay, there's no clearly established law on that. But the statute doesn't read in terms of cases on all fours. It reads unreasonable application of clearly established federal law, which clearly suggests that any law that's analogous could be applicable. Judge Thompson has asked a question here, which I thought is what you would have centered your rebuttal remarks on, and that is it has to be an unreasonable application. Application itself is not the question. Was it reasonable or unreasonable? I think that's an excellent question, Your Honor. In my opinion, it's not reasonable because the reasonableness comes down to if they ruled that the evidence was insufficient to admit the letter, if there was no evidence to do that, then the evidence was clearly insufficient to convict him. And now they want to argue that because the court made a technical ruling on the letter and didn't go straight to the sufficiency of the evidence issue, which my client clearly would have won on, that therefore they can retry him. And in my opinion, that is unreasonable. The case is bizarre. I think that the story about the walk just accentuates how bizarre this case is. And when we talk about bizarreness, we come down to miscarriages of justice, Your Honor. This isn't a case where my client says, yes, I committed that crime. This is a case where he talks about a coerced confession, which isn't an issue that's before you. But it is a case where he contends that he is innocent and that something very bizarre has happened which should not have happened. Thank you very much, counsel. Do you know, and this is just interesting, I'm just curious, why the law enforcement officers decided that Adam Weiser could not have been the ‑‑ I had that same question, too, and I could not make that determination. Thank you, Your Honor. Thank you, Judge Callen, and thank you, Judge Thompson, for being here. And thank you, Judge Smith, for your time. Thank you very much, counsel. We will take the case under advisement. Bob, can you remain on the line? I can remain on the line or the clerk can call me back as soon as you get yourself reconstituted. I think we'll just conference the case here in the courtroom after everyone has exited. I'll remain on. All right, thank you. Thank you very much. We'll ask the clerk to close the court. Please rise. This court is adjourned until tomorrow at 10 a.m.